**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
James C. Shah, Esq. (SBN 260435)
jshah@sfmslaw.com
475 White Horse Pike
Collingswood, NJ 08107
Tel: (856) 858-1770
Fax: (860) 300-7367

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074) (*pro hac vice application forthcoming*)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037) (*pro hac vice application forthcoming*)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730) (*pro hac vice application forthcoming*)
bsodaify@clarksonlawfirm.com
Zach Chrzan (SBN 329159) (*pro hac vice application forthcoming*)
zchrzan@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGAN IGLESIA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TOOTSIE ROLL INDUSTRIES, LLC, an Illinois company, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION** <br><br> **COMPLAINT:** <br><br> 1. VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A Section 56:8-1, *et seq.*) <br> 2. BREACH OF EXPRESS WARRANTY (N.J.S.A. Section 12A:2-313 *et seq.*) <br> 3. UNJUST ENRICHMENT <br> 4. COMMON LAW FRAUD <br> 5. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY <br> 6. INTENTIONAL MISREPRESENTATION <br> 7. NEGLIGENT MISREPRESENTATION <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Regan Iglesia ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Complaint against Defendant Tootsie Roll Industries, LLC ("Tootsie" or "Defendant") in connection with the false, deceptive, unfair, unlawful, and fraudulent advertising and labeling of opaque theater box candy products Junior Mints® and Sugar Babies®  (the "Products"). Plaintiff alleges upon his personal knowledge, acts, and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys and their retained experts:

## INTRODUCTION

1.      Tootsie manufactures the most popular theater box candy products in the world. To increase profits at the expense of consumers and fair competition, Tootsie pioneered a scheme to deceptively sell candy in oversized, opaque boxes that do not reasonably inform consumers that they are half empty. Tootsie's "slack-fill" scam dupes unsuspecting consumers across America to pay for empty space at premium prices. Figures 1-4 below are true and correct representations of Tootsie's Products illustrating their uniformly deceptive, unfair, and unlawful business practice.

///

///

///

///

///

///

///

///

///

///

///

***Figure 1.***




 Empty Space (Slack-fill)

 Candy

***Figure 2.***



2.      Defendant failed to comply with consumer protection and packaging statutes designed to prevent this scam, and relied on its name and goodwill to further this scam even in the face of other lawsuits against similar companies, including two certified class actions in California against Defendant's competitors for the same violations. This class action aims to remedy Defendant's unfair business practice by making consumers whole for money lost as a result of Defendant's deceptive product packaging.

***Figure 3.***

 

  Empty Space (Slack-fill)

  Candy

COMPLAINT

**_Figure 4._**



3.      Defendant marketed the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contained an unlawful amount of empty space or "slack-fill."[1]Defendant underfilled the Products for no lawful reason. The only purpose of this practice was to save money (by not filling the boxes) in order to deceive consumers into purchasing Defendant's Products over its competitors' products. Defendant's slack-fill scheme not only harmed thousands of consumers but also harmed their competitors who had implemented labeling changes designed to alert consumers to the true amount of product in each box, long before Defendant did. Accordingly, Tootsie has violated the New Jersey Consumer Fraud Act ("CFA"), Section 56:8-1, *et seq.*; New Jersey Administrative Code Section 13:45A-9.1, *et seq.*; was unjustly enriched; has

---

[1] Following an action by Plaintiff Ketrina Gordon against Defendant in the Central District of California, *Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal.), Defendant updated the Products' packaging to address the claims of consumer deception at issue. That Plaintiff discovered on May 2, 2018 that Defendant intended to roll out production of the updated packaging. Specifically, Defendant added to the front of the Products' boxes a prominent depiction of the "actual size" of the candy therein, accompanied by a numerical "piece count" and additional disclaimers regarding, *inter alia*, product settling. Taken together, these packaging modifications eliminated consumer deception caused by Defendant's previous packaging by conspicuously informing consumers of the exact size and number of candy pieces they are buying. In addition, such packaging modifications mirror compliance with the California State Assembly's recent amendments to the applicable slack-fill statute. While such changes provide consumers greater transparency and the ability to make informed choices at the point of purchase before purchasing the Products, they do not address restitutionary relief and money lost by that Plaintiff and the Class as a result of Defendant's deceptive packaging during the class period.

COMPLAINT

committed common law fraud; has engaged in intentional and negligent misrepresentation, and has breached the implied warranty of merchantability.

4.     Plaintiff and the Class Members accordingly suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and restitutionary damages.

## COURTS AROUND THE COUNTRY FIND SLACK-FILL VIOLATIONS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT

5.     Several state and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See Iglesias v. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims denied and nationwide settlement class certified); *Tsuchiyama v. Taste of Nature, Inc*., Case No. BC651252 (L.A.S.C.) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Gordon v. Tootsie Roll Industries, Inc*., Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot Tamales® candy box claims denied and California class action certified); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020) (certifying as a class action slack-fill claims brought under California consumer protection laws).

## PARTIES

6.     Plaintiff Regan Iglesia is an individual residing in New Jersey. Plaintiff Iglesia purchased the Products in New Jersey within the last six (6) years of the filing of this Complaint. Specifically, Plaintiff Iglesia purchased the Junior Mints Product in

2017 at Albertsons in New Jersey. In making his purchase, Plaintiff relied upon the opaque packaging, including the size of the box and Product label, which was prepared and approved by Tootsie and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff Iglesia to purchase the Products. Plaintiff understood the size of the box and product label to indicate the amount of candy contained therein was commensurate with the size of the box, and he would not have purchased the Product, or would not have paid a price premium for the Product, had he known that the size of the box and Product label were false and misleading.

7.      Tootsie Roll Industries, LLC is a corporation headquartered in Chicago, Illinois. Tootsie Roll maintains its principal place of business at 7401 South Cicero Ave., Chicago, IL, 60629-5885. Tootsie, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New Jersey. Tootsie is the owner, manufacturer, distributor, advertiser, and seller of the Products, and is the company that created and/or authorized the false, misleading, and deceptive advertisements and/or packaging and labeling for the Products.

8.      Plaintiff is informed and believes, and based thereon alleges that at all times relevant herein each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the other Defendant and was acting in such capacity in doing the things herein complained of and alleged.

9.      In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

10.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that its advertising of the Products' boxes, specifically by representing that they were full, were false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of candy product contained in the Products' boxes in order to convince the public and the Products' consumers users to purchase the Products all to the financial damage and detriment of the Plaintiff and the consuming public.

11.     Defendant, upon becoming involved with the manufacture, distribution, advertising, labeling, marketing, and sale of the Product, knew or should have known that the claims about the Products and, in particular, the claims suggesting that Products' boxes were full with candy product when they are not, were false, misleading, and deceptive. Defendant affirmatively misrepresented the nature and characteristics of the Products in order to convince the public to purchase and consume the Products, resulting in profits to the detriment of the Plaintiff and consuming public. Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendant further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations as herein alleged.

12.     Defendant created a falsehood that their candy boxes contain an amount of candy commensurate with the size of the box, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Products are false, misleading, and/or likely to deceive in violation of New Jersey and federal advertising laws.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.

This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

14.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Regan Iglesia is a citizen of New Jersey who resides in Atlantic County, New Jersey; Tootsie made the challenged false representations to Plaintiff Iglesia in this District; Plaintiff Iglesia purchased the Product in this District; and Plaintiff Iglesia consumed the Product within this District. Moreover, Tootsie receive substantial compensation from sales in this District, and Tootsie made numerous misrepresentations which had a substantial effect in this District, including but not limited to, label, packaging, Internet, and infomercial advertisements, among other advertising.

15.     Tootsie is subject to personal jurisdiction in New Jersey based upon sufficient minimum contacts which exist between Tootsie and New Jersey.  Tootsie is authorized to do and are doing business in New Jersey.

## FACTUAL BACKGROUND

16.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase,[2] which decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased.[3]

17.     Accordingly, Tootsie chose a certain size box for its Products to convey to consumers that they are receiving a certain and substantial amount of candy

---

[2] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window./.

[3] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

commensurate with the size of the box. Such representations constitute an express warranty regarding the Products' contents.

18.      Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

19.      Tootsie falsely represents the quantity of candy in each of the Products' opaque boxes through its packaging. The size of each box leads the reasonable consumer to believe he or she is purchasing a box full of candy product when, in reality, what he or she actually receives is about one-third to one-half less than what is represented by the size of the box. Plaintiff's packaging expert will opine that the Products contain a high degree of nonfunctional slack-fill.

20.      Even if Plaintiff and other reasonable consumers of the Products had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box.

21.      Plaintiff retained two economics experts. These experts conducted a randomized conjoint experiment which included a 3,788-participant consumer survey. The results from the survey confirmed that nearly 90% of candy consumers overestimate the amount of candy contained in the Products. This is true even for repeat purchasers of the Products. This survey also shows that size of the Products' packaging has a significant impact on a consumer's choice to purchase the Products.

22.      Plaintiff's packaging and economic experts will opine that the Products contained a high degree of nonfunctional slack-fill. Based on their calculations, they will opine that the price premium for Juniors Mints was 26.0% while the price premium for Sugar Babies was 21.5% for the retail sales channel. For the movie

theater sales channel, the price premia for Junior Mints and Sugar Babies was 16.4% and 13.4%, respectively.

23.     Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill, let alone the one-third to one-half nonfunctional slack-fill that is present in the Products.

24.     The other information that Tootsie provides about the quantity of candy product on the front and back labels of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the box itself. For instance, the front of the Products' packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of candy to be expected, such as a fill line, actual size depiction accompanied by the words "actual size," and a numerical piece.

25.     Disclosures of net weight and serving sizes in ounces or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of candy contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box. Plaintiff's randomized conjoint survey confirmed the net weight disclosures on the Products do not give consumers an accurate expectation regarding product fill level.

26.     The net weight and serving size disclosures does not allow Plaintiff to make – and Plaintiff did not make – any meaningful conclusions about the quantity of candy product contained in the Products' boxes that were different than Plaintiff's

expectations that the quantity of candy product would be commensurate with the size of the box.

27.     Moreover, the top of the Products' boxes clearly indicate that they will open outward when unsealed. This specific design leads the reasonable consumer to believe that the package does not require any empty space to account for the opening of the box, such as with a perforated tab whose intended use might be to dispense the candy product. True and correct images of the top of a representative sample of the Products' boxes appear below as Figures 5 and 6.

***Figure 5.***



***Figure 6.***



28.     Plaintiff would not have purchased the Products had he known that the Products contained slack-fill that serves no functional or lawful purpose.

29.     As pictured *supra*, Tootsie uniformly under-fill the Products' boxes, rendering about half of each box slack-fill, none of which serves a functional or lawful purpose.

30.     As confirmed during Plaintiff's investigation, including retention of experts in packaging design, the slack-fill contained in the Products' packaging does not protect the contents of the packages. In fact, the greater the amount of slack-fill, the more room the contents have to bounce around during shipping and handling,

making it more likely that the contents will break or sustain damage. Plaintiff shall proffer expert testimony to establish these facts once this case reaches the merits.

31.     If, on the other hand, the amount of candy product contained in each box was commensurate with the size of the box, as reasonable consumers expect, then the candy product would have less room to move around during shipping and handling, and would be less likely to sustain damage.

32.     As such, the slack-fill present in the Products' packaging makes the candy product more susceptible to damage, and, in fact, causes the candy product to often sustain damage.

33.     The Products are packaged in boxes and sealed with heated glue. A true and correct representation of the heated glue on the Products' packaging is shown in the image below.

*__Figure 7.__*



34.     As confirmed by Plaintiff's expert in packaging design, the equipment used to seal the box does not breach the inside of the Products' containers during the packaging process. The heated glue is applied to an exterior flap of the box, which is then sealed over the top by a second exterior flap.

35.     As confirmed during Plaintiff's survey of comparator boxed candy products available in the marketplace, neither the heated glue application nor the sealing equipment requires slack-fill during the manufacturing process. Even if there were no slack-fill present in the Products' boxes, the machines used for enclosing the contents in the package would work without disturbing the packaging process.

36.     As confirmed by Plaintiff's expert in packaging design, the slack-fill present in the Products' containers is not a result of the candy product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of filling the box. No additional product settling occurs during subsequent shipping and handling.

37.     The contents of the Products are of a great enough density that any slack-fill present at the point of sale was present at the time of filling the containers and packaging the contents.

38.     As confirmed by Plaintiff's expert in packaging design, the Products' packaging is not reusable or of any significant value to the Products independent of its function to hold the candy product. The Products' containers are boxes intended to be discarded immediately after the candy is eaten.

39.     As confirmed by Plaintiff's expert in packaging design, the slack-fill present in the Products' containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

40.     Tootsie can easily increase the quantity of candy product contained in each box (or, alternatively, decrease the size of the containers) by 33-50% more volume. The "Nutrition Facts" panel on the back of each box states servings of 2.5 and 4.5 servings per container for Junior Mints® and Sugar Babies®, respectively. By arithmetic, each serving would be equal to 100% expected total fill, divided by 2.5 servings for Junior Mints® and divided by 4.5 servings for Sugar Babies®, yielding a value of 40% of volume per serving for Junior Mints® and 22.2% of volume per serving for Sugar Babies®. Given the Products can accommodate an additional 45% of candy product, consumers are being shortchanged roughly 1.5 and 2.5 servings per box. True and accurate representations of the Products' net weight and serving size disclosures are set forth below in Figure 8.

///

///

**_Figure 8._**



41.     Contrast Defendant's packaging of the Products with a comparator product, such as  "Junior Mints XL" ("XL") (pictured below), another candy product manufactured by Defendant itself and similarly sold at retail outlets and movie theaters throughout New Jersey and the United States. A true and correct representation of the front of XL is shown below in Figure 9.

**_Figure 9._**



42.     XL is sold in identical packaging to that of the Products, i.e., opaque boxes of identical size, physical dimensions, shape, and material.

43.     XL is packaged using identical fill and heated glue enclosing machines to those of the Products.

44.     XL contains identical candy—identical size, shape, and density—as that of the Products.

45.     However, contrary to the Products, XL contains more candy product. The Products' packaging contains 40 pieces of candy, yielding 45% nonfunctional slack-fill. In contrast, XL, which has the exact same packaging, contains 47 pieces of candy, yielding 33% nonfunctional slack-fill. In other words, the two products within the line of Products at issue have the exact same packaging and candy product, and the only difference is the amount of candy product contained therein.

46.     The Products both have serving sizes of 16 pieces of the same candy. Yet, XL contains a greater number of total servings. A true and correct presentation of the nutritional panel of XL, which reports its serving size and total servings per container, is set forth below in Figure 10.

***Figure 10.***



47.     The packaging of XL evidences that Defendant is clearly capable of increasing the amount of candy product contained in "regular" Junior Mints®, as demonstrated by the packaging and sale of the "XL" version.

48.     XL's packaging evidences that the slack-fill present in the Products is nonfunctional.

49.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not necessary to protect and in fact does not protect the contents of the Products.

50.   XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a requirement of the machines used for enclosing the contents of the Products.

51.   XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a result of unavoidable product settling during shipping and handling

52.   XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not needed to perform a specific function.

53.   XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not part of a legitimate reusable container.

54.   In short, by including more candy product in the exact same box, and then reporting a higher number of total servings, Defendant itself admits that the Products contain nonfunctional slack-fill.

55.   XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is able to further increase the level of fill in the Products. XL's packaging evidences that Defendant has reasonable alternative designs available to package its Products.

56.   Further contrast Tootsie's packaging of the Products with a comparator product, such as "Boston Baked Beans" ("Boston Beans"), a candy product manufactured by Tootsie's competitor, Ferrara Candy Co., and similarly sold at movie theaters and retail outlets located throughout New Jersey and the United States. A true and correct representation of the front of the Boston Beans product is shown in the image below as Figure 11.

///

///

///

*__Figure 11.__*



57.     Boston Beans are sold in identical packaging to that of the Products, i.e.,
opaque boxes of identical size, shape, volume, and material. Boston Beans are
packaged using nearly identical fill and heated glue enclosing machines to those of the
Products.

58.     Boston Beans are coated candies of nearly identical size, shape, and
density of that of the Products. However, contrary to the Products, Boston Beans have
very little slack-fill and negligible nonfunctional slack-fill. A true and correct
representation of the open container of Boston Beans is pictured in Figure 12 below.

*__Figure 12.__*



59.     Boston Beans' packaging provides additional evidence that the slack-fill
present in the Products' packaging is nonfunctional to the tune of 33-50%.

60.    Boston Beans' packaging provides additional evidence that the slack-fill in the Products is not necessary to protect and, in fact, does not protect, the contents of the Products; is not a requirement of the machines used for enclosing the contents of the Products; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

61.    Boston Beans' packaging provides additional evidence Tootsie is able to increase the level of fill inside the Products' boxes which are similar to Boston Beans.

62.    Boston Beans' packaging provides more evidence that reasonable alternative packaging designs exist and are available.

63.    As confirmed by Plaintiff's economics experts and large-scale, randomized conjoint consumer study, fill level and box size have a causal impact on consumers' willingness to pay for the Products. Specifically, the price premium for Junior Mints was 26.0% while the price premium for Sugar Babies was 21.5% for the retail sales channel. For the move theater sales channel, the price premia for Junior Mints and Sugar Babies was 16.4% and 13.4%, respectively. Plaintiff would not have purchased the Product if he had known that the Product packaging contained nonfunctional slack-fill.

64.    Plaintiff did not expect that the Products would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law as well as New Jersey law.

65.    The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

66.    The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

67.    Tootsie's false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

68.    Tootsie intended for Plaintiff and the Class members to be misled.

69.     Tootsie's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action individually and on behalf of a class of all other persons similarly situated. The Class which Plaintiff seeks to represent comprise:

> "All persons who purchased the Product(s) in New Jersey for personal consumption and not for resale during the time period of six years prior to the filing of the complaint through May 2, 2018."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

71.     On March 25, 2019, the United States District Court for the Central District of California certified a class action against one of Tootsie's highly visible competitors, Just Born, Inc., involving nearly identical claims and products (opaque theater boxes of Mike N'Ikes candies) under Federal Rule of Civil Procedure 23. *See Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal. Mar. 25, 2019).

72.     On April 29, 2020, a California State Court certified a class action against Defendant's other highly visible competitors,  Nestle USA, Inc. and Ferrara Candy Co., for nearly identical claims and products (opaque theater boxes of Raisinets, Buncha Crunch, Butterfinger Bites, Nerds, and other popular candies) under California law. *See Thomas v. Nestle USA, Inc.*, Los Angeles Superior Court Case No. BC 649863 (Apr. 29, 2020).

73.     The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions throughout New Jersey. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail

and/or publication through the distribution records of Tootsie and third-party retailers and vendors.

74.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a.  The true nature and amount of product contained in each Products'
    packaging;

b.  Whether the marketing, advertising, packaging, labeling, and other
    promotional materials for the Products are deceptive;

c.  Whether Tootsie misrepresented the approval of the FDA, United States
    Congress, and New Jersey Legislature that the Products' packaging
    complied with federal and New Jersey slack-fill regulations and statutes;

d.  Whether the Products contain nonfunctional slack-fill in violation of 21
    C.F.R. Section 100.100, *et seq.*;

e.  Whether Tootsie's conduct is a deceptive act within the meaning of New
    Jersey Statues 56:8-1, *et seq.*;

f.  Whether Tootsie's conduct is a false advertising within the meaning of
    New Jersey Administrative Code Section 13:45A-9.1, *et seq.*;

g.  How much money Plaintiffs and the Class paid for the Products than
    they actually received;

h.  Whether Plaintiffs and the Class paid more money for the Products than
    they actually received;

i.  Whether Tootsie were unjustly enriched at the expense of Plaintiffs and
    the Class members;

j.  Whether Tootsie engaged in negligent misrepresentation of the Products;

k.  Whether Tootsie engaged in intentional misrepresentation of the
    Products;

l.  Whether Tootsie committed common law fraud; and

m. Whether Tootsie breached an implied warranty to Plaintiffs and Class members.

75.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation. Plaintiff's Counsel prosecuted two of the largest slack-fill nationwide class action settlements in 2018 and 2020. Plaintiff's Counsel also was the first law firm to successfully certify a slack-fill lawsuit involving theater box candy confectioners (twice in 2019 and 2020, respectively).

76.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Tootsie's false representations. Plaintiff purchased the Products because of the size of the box and the product label, which he believed to be indicative of the amount of candy product contained therein as commensurate with the size of the box. Plaintiff relied on Tootsie's representations and would not have purchased the Products if he had known that the packaging, labeling, and advertising as described herein was false and misleading.

77.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually.

78.     The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Tootsie's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

79.     Tootsie has acted on grounds generally applicable to the entire Class, thereby making declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of

inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Tootsie.

80.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

## Violation of New Jersey Consumer Fraud Act,

## N.J.S.A. § 56:8-1, *et seq.*

81.     Plaintiff Iglesia repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

82.     This cause of action is brought pursuant to New Jersey Statute Annotated Section 56:8-1, *et seq.*, the New Jersey Consumer Fraud Act ("CFA"), on behalf of a Class consisting of "All persons who purchased the Product(s) in the State of New Jersey for personal use and not for resale during the time period of six years prior to the filing of the complaint through May 2, 2018." Excluded from the Class are Tootsie's officers, directors, and employees, and any individual who received remuneration from Tootsie in connection with that individual's use or endorsement of the Product."

83.     The CFA, N.J.S.A. Section 56:8-2 deems "…[a]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise … whether or not any person has in fact been misled, deceived or damaged thereby … is declared to be an unlawful practice…"

84.     In violation of the CFA, Tootsie has affirmatively misrepresented material facts with the intent that consumers rely upon such concealment and deception in connection with the amount of product that is contained in each Products' packaging.

85.     If a person suffers "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under" the CFA "may bring an action . . . therefor in any court of competent jurisdiction" for "legal or equitable relief" "sustained by any person in interest," pursuant to N.J.S.A. § 56:8-19.

86.     The practices described herein, specifically Tootsie's labeling, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate the CFA by (1) engaging in an unlawful practice using deceptive representations in connection with the Products; (2) resulting in an ascertainable loss to Plaintiff and the Plaintiff's Class; and (3) the unlawful conduct created the ascertainable loss.

87.     Tootsie's conduct, as set forth above, constitutes unfair, fraudulent and/or deceptive trade practices prohibited under the CFA.

88.     Tootsie fraudulently deceived Plaintiff and the Class, and intentionally misrepresented and concealed material facts from Plaintiff Iglesia and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff Iglesia and the Class and depriving them of their legal rights and money.

89.     Tootsie knew or should have known, through the exercise of reasonable care, that the Products were consistently underfilled by one-third to one-half with nonfunctional and unlawful slack-fill.

90.     Tootsie's actions as described herein were done with conscious disregard of Plaintiff Iglesia's rights and Tootsie were wanton and malicious in its concealment of the same.

91.     Tootsie's packaging, labeling, and advertising of the Products were a material factor in Plaintiff Iglesia's and the Class's decisions to purchase the Products,

as they indicated the amount of product contained in the Products' packaging would be commensurate with the size of the box. Tootsie's packaging and labeling were intended to, and did, induce Plaintiff Iglesia and members of the Class to rely upon Tootsie's representations that the Products' packaging would be adequately filled with candy product. These representations were a substantial factor in causing Plaintiff Iglesia and the Class to purchase the Products.

92.     Based on Tootsie's advertising of the Products, Plaintiff Iglesia and the Class reasonably believed they would receive boxes that contained a greater amount of candy product.

93.     At the time Plaintiff Iglesia and the Class purchased the Products, they were unaware of the fact that the Products contained significantly less product than indicated by the product packaging, specifically one-third to one-half less.

94.     Had they known that Tootsie was making misrepresentations about the Products' quantity, Plaintiff Iglesia and the Class would not have purchased the Products.

95.     Plaintiff Iglesia and the Class have suffered injury in fact and have lost money as a result of Tootsie's false representations.  These acts and omissions directly and proximately caused Plaintiff Iglesia and the Class to suffer an ascertainable loss in the form of, *inter alia*, money spent purchasing the Products, as well as the at a premium paid for the Products due to the mislabeling of the Products, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

96.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

97.     Plaintiff Iglesia seeks all available forms of relief provided under this statute, including damages and treble damages.

///

## COUNT TWO

## Breach of Express Warranty,

## N.J.S.A. § 12A:2-313, *et seq.*

98.     Plaintiff Iglesia repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

99.     This cause of action is brought on behalf of a Class consisting of "All persons who purchased the Product(s) in the State of New Jersey for personal use and not for resale during the time period of four years prior to the filing of the complaint through May 2, 2018. Excluded from the Class are Tootsie's officers, directors, and employees, and any individual who received remuneration from Tootsie in connection with that individual's use or endorsement of the Product."

100.     Plaintiff Iglesia and each member of the Class formed a contract with Tootsie at the time they purchased the Products. The terms of such contract included the promises and affirmations of fact made by Tootsie on the Products' packaging, including the amount and quantity of candy product contained therein. This labeling, marketing, and advertising constitute express warranties that became part of the basis of the bargain, and which are part of the standardized contract between Plaintiff and members of the Class and Tootsie.

101.     Tootsie purports, through their advertising, labeling, marketing, and packaging, to create an express warranty that the Products' packaging contains an expected certain amount of candy product therein.

102.     Plaintiff Iglesia and the Class performed all conditions precedent to Tootsie's liability under this contract when they purchased the Products.

103.     Tootsie breached express warranties about the Products and their quantities, because Tootsie's statements about the Products were false and the Products do not conform to Tootsie's affirmations and promises, as described herein. Specifically, the Products' boxes contain one-third to one-half less candy product than consumers expect to receive.

104.     Plaintiff Iglesia and the Class were injured as a direct result of Tootsie's breach because (a) they would not have purchased the Products if they had known the true facts; (b) they paid a premium due to the mislabeling of the Products; and (c) the Products did not have the quantity that was promised.

## COUNT THREE

### Unjust Enrichment

105.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

106.     As a result of Tootsie's wrongful and deceptive conduct, Plaintiff and the Class have suffered a detriment while Tootsie have received a benefit.

107.     In purchasing the Products, Plaintiff and the Class conferred a benefit upon Tootsie by paying a premium price for the purchase of each Product. Plaintiff and the Class paid for the Products with the expectation that they would receive packages that were full of candy product, as indicated by the labeling, advertising, and marketing of the Products.

108.     Tootsie has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class' purchases, which retention under these circumstances is unjust and inequitable.

109.     Tootsie should not be allowed to retain the profits generated and profits realized from the sale of the Products that were unlawfully marketed, labeled, and promoted.

110.     Allowing Tootsie to retain these unjust profits is inequitable and would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

111.     Because Tootsie's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class is unjust and inequitable, Tootsie must pay restitution to Plaintiff and the Class members for its unjust enrichment.

///

## COUNT FOUR

### Common Law Fraud

112.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs and incorporates the same as if set forth herein at length.

113.    Plaintiff brings this cause of action individually and on behalf of the members of the Class against Tootsie.

114.    Tootsie has willfully, falsely, and knowingly filled and packaged the Products in a manner indicating that the Products are sufficiently filled with an amount of candy product commensurate with the size of the container.  However, the Products contain one-third to one-half less candy product than required and instead contain a substantial amount of nonfunctional and unlawful slack-fill. Tootsie has misrepresented the quantity of candy product contained in the Products.

115.    Tootsie's misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the quantity of candy product contained in the Products.

116.    Tootsie knew of, or showed reckless disregard for, the fact that the Products contained a substantial amount of nonfunctional slack-fill.

117.    Tootsie intended for Plaintiff and the Class to rely on these representations, as evidenced by Tootsie's intentional manufacturing of packaging that is substantially larger than necessary to hold the volume of the contents contained therein.

118.    Plaintiff and the Class have reasonably and detrimentally relied on Tootsie's misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

119.    Therefore, as a direct and proximate result of Tootsie's fraud, Plaintiff and members of the Class have suffered injury in fact.

## COUNT FIVE

### Breach of Implied Warranty of Merchantability

120.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

121.     Plaintiff brings this cause of action individually and on behalf of the members of the Class against Tootsie.

122.     Tootsie, as the designer, manufacturer, marketer, distributor, and seller of the Products, impliedly warranted that the Products contained an adequate amount of candy product for containers of their size.

123.     Tootsie breached the warranty implied in the contract for sale of the Products because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the foods were unfit for their intended and ordinary purpose because the Products' packages do not contain an adequate amount of candy for containers of their size. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Tootsie to be merchantable.

124.     Plaintiff and Class members purchased the Products in reliance upon Tootsie's skill and judgment and the implied warranties of fitness for the purpose.

125.     The Products were defectively designed and unfit for their intended purpose, and Plaintiff and the Class did not receive the goods as warranted.

126.     As a direct and proximate cause of Tootsie's breach of the implied warranty, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Tootsie's false representations. Plaintiff purchased the Products in reliance upon the claims by Tootsie that the Products were of the quality and quantity represented by Tootsie's packaging. Plaintiff would not have purchased the Products, or would have paid significantly less for the Products, if he had known that the Products' claims and advertising as described herein were false.

///

## COUNT SIX

### Intentional Misrepresentation

127.    Plaintiff repeats and realleges all of the allegations contained above and incorporates the same as if set forth herein at length.

128.    Plaintiff brings this cause of action individually and on behalf of all members of the Class against Tootsie.

129.    Tootsie has filled and packaged the Products in a manner indicating that the Products are adequately filled with candy product. However, the Products contain one-third to one-half less candy product than required and instead contain a substantial amount of nonfunctional slack-fill. Tootsie misrepresented the quantity of candy product contained within the Products' packaging.

130.    Tootsie's misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

131.     At all relevant times when such misrepresentations were made, Tootsie knew or should have known that the representations were misleading.

132.    Tootsie intended for Plaintiff and the Class to rely on the size and style of the Products' packaging, as evidenced by Tootsie's intentional manufacturing, marketing, and selling of packaging that is significantly larger than is necessary to contain the volume of the contents within them.

133.    Plaintiffs and members of the Class reasonably and justifiably relied on Tootsie's intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

134.    As a direct and proximate result of Tootsie's intentional misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

///

## COUNT SEVEN

## Negligent Misrepresentation

135.    Plaintiff repeats and realleges all of the allegations contained above and incorporates the same as if set forth herein at length.

136.    Plaintiff brings this cause of action individually and on behalf of the Class against Tootsie.

137.    Tootsie has filled and packaged the Products in a manner indicating that the Products are adequately filled with candy product. However, the Products contain one-third to one-half less candy product than required and instead contain a substantial amount of nonfunctional slack-fill. Therefore, Tootsie have misrepresented the amount of candy product contained in the Products.

138.    Tootsie's misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by the consumer. A reasonably consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

139.    At all relevant times when such misrepresentations were made, Tootsie knew or should have known that the Products were not adequately filled with candy but instead contained a substantial amount of nonfunctional slack-fill.

140.     Tootsie intended for Plaintiff and the Class to rely on the size and style of the Products' packaging, as evidence by Tootsie's packaging that is significantly larger than is necessary to contain the volume of the candy product therein.

141.    Plaintiff and the Class reasonably and justifiably relied on Tootsie's negligent misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

142.    Therefore, as a direct and proximate result of Tootsie's negligent misrepresentations, Plaintiff and the Class have suffered injury in fact.

///

COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.   Damages against Tootsie in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

B.   Treble damages under the New Jersey Consumer Fraud Act;

C.   Restitution and/or disgorgement in an amount to be determined at trial;

D.   Punitive damages;

E.   For pre-judgment interest from the date of filing this suit;

F.   Reasonable attorney fees and costs; and

G.   Such other and further relief as the Court may deem necessary or appropriate.

## NOTICE TO ATTORNEY GENERAL

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days of filing pursuant to N.J.S.A. §56:8-20.

DATED: December 10, 2020

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

/s/ James C. Shah_____
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ 08107
Phone:  856-858-1770
Email:  jshah@sfmslaw.com
            nfinkelman@sfmslaw.com

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (*phv* application to be filed)
Matthew T. Theriault (*phv* application to be filed)
Bahar Sodaify (*phv* application to be filed)
Zach Chrzan (*phv* application to be filed)
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*Attorneys for Plaintiff*