NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REGAN IGLESIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TOOTSIE ROLL INDUSTRIES, LLC,<br><br>    Defendant. | Civ. No. 20-18751<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Tootsie Roll Industries ("Defendant"). (ECF. No. 15.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 15) is granted.

## BACKGROUND

### I.    Factual Background

This case is about the difference between the capacity of a box of candy and the amount of candy found therein. Plaintiff Regan Iglesia ("Plaintiff") alleges that Defendant packages, markets, and advertises Junior Mints and Sugar Babies (collectively, the "Products"), in a misleading manner by representing them as adequately filled, when in fact they contain "an unlawful amount of empty space, or 'slack-fill.'" (Am. Compl. ¶ 3, ECF No. 13.)

A.    *The Parties*

Defendant is a Chicago, Illinois-based corporation that manufactures, distributes, advertises, and sells the Products. (*Id.* ¶ 7.) Plaintiff is a resident of New Jersey. (*Id.* ¶ 6.) In 2017, Plaintiff purchased a box of Junior Mints at an Albertsons store in New Jersey. (*Id.*) When making the purchase, Plaintiff alleges that he "understood the size of the box and product label to indicate the amount of candy contained therein was commensurate with the size of the box[.]" (*Id.*) He states that "he would not have purchased the Products had he known that the Products contained slack-fill that serves no functional or lawful purpose." (*Id.* ¶ 46.) Plaintiff brings a putative class action on behalf of "all persons who purchased the Product(s) in New Jersey for personal consumption and not for resale during the time period of six years prior to the filing of the complaint through May 2, 2018." (*Id.* ¶ 87.)

B.    *The Products*

The Products are packaged in opaque, rectangular boxes sealed with heated glue. (*Id.* ¶¶ 19–21, 26.) The front panel of Products' packaging lists the net weight of the Products. (*Id.* ¶ 57, Figure 8.) A box of Junior Mints weighs 3.5 net ounces, and a box of Sugar Babies weighs 6 net ounces. (*Id.*) The back panel provides the ingredients and serving sizes of the Products. (*Id.*) A serving size of Junior Mints is 16 pieces, and a box contains about 2.5 servings; a serving size of Sugar Babies is 27 pieces, and a box contains about 4.5 servings. (*Id.*) The back panel of the Junior Mints box also contains the disclosure "product sold by weight not volume." (*Id.*) The back panel of the Sugar Babies box does not include this disclosure. (*See id.*) Neither Product contains visual indications of the amount of candy in each box, such as a fill-line, actual-size depiction, or a statement of the number of pieces of candy in each box. (*Id.* ¶ 42.)

Plaintiff contends that, based on the Products' packaging, a "reasonable consumer"

2

would believe that they are purchasing a full box of candy, when in reality the amount of candy product actually received represents "about one-third to one-half less than what is represented by the size of the box." (*Id.* ¶¶ 32, 38.) Plaintiff avers that "[t]he net weight and serving size disclosures" do not allow consumers to make "any meaningful conclusions about the quantity of the candy product contained in the Product's boxes[.]" (*Id.* ¶ 44.) Plaintiff retained two economics experts, who found, through a "randomized conjoint experiment," that "nearly 90% of candy consumers overestimate the amount of candy contained in the Products." (*Id.* ¶ 39.)

Plaintiff alleges that the Products contain roughly 45% non-functional slack-fill. (*Id.* ¶ 32.) Plaintiff contends that Defendant underfills the Products for "no lawful reason," and solely "to save money[.]" (*Id.* ¶ 3.) Plaintiff proffers two comparator products: Junior Mints XL and Boston Baked Beans. (*Id.* ¶¶ 58–79.) According to Plaintiff, a box of Junior Mints XL is identical in all aspects to a box of Junior Mints, except that it contains more candy product and less slack-fill. (*Id.* ¶ 62.) Plaintiff also points to Boston Baked Beans, a candy product manufactured by a competitor, which contains "very little slack-fill and negligible non[-]functional slack-fill." (*Id.* ¶ 75.)

According to Plaintiff's experts, Defendant charges a "price premium" for the Products. (*Id.* ¶ 40.) Plaintiff alleges that, in the "retail sales channel," there is a 26.0% price premium for Junior Mints and a 21.5% price premium for Sugar Babies, and in the "movie theater sales channel," there is a 16.4% price premium for Junior Mints and a 13.4% price premium for Sugar Babies. (*Id.*) Based on the number of serving sizes and the size of the boxes, Plaintiff alleges that "consumers are being shortchanged roughly 1.5 and 2.5 servings per box." (*Id.* ¶ 57.)

## II.   Procedural History

Plaintiff filed the Complaint on December 10, 2020. (ECF No. 1.) Defendant moved to

dismiss the Complaint. (ECF No. 10.) Plaintiff filed the operative Amended Complaint on February 19, 2021. (ECF No. 13.) Plaintiff alleges seven counts: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8–1, *et seq*. (Am. Compl. ¶¶ 98–113); (2) breach of express warranty, N.J. Stat. Ann. § 12A:2–313, *et seq*. (*id.* ¶¶ 114–120); (3) unjust enrichment (*id.* ¶¶ 121–127); (4) common-law fraud (*id.* ¶¶ 128–135); (5) breach of implied warranty of merchantability (*id.* ¶¶ 136–142); (6) intentional misrepresentation (*id.* ¶¶ 143–150); and (7) negligent misrepresentation (*id.* ¶¶ 151–158).

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint on March 5, 2021. (ECF No. 15.) Plaintiff filed an Opposition (ECF No. 18), and Defendant filed a Reply (ECF No. 21). Defendant's Motion to Dismiss the Amended Complaint is presently before the Court.

## LEGAL STANDARD

### I.      Rule 9(b)

The heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies to NJCFA claims and claims for fraud and fraudulent misrepresentation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Rule 9(b) also applies to claims for negligent misrepresentation that "sound in fraud." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." *Frederico*, 507 F.3d at 200. "[A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Id.* (internal quotation marks omitted). To meet this standard, the plaintiff must allege "the date, time and place of the alleged fraud or otherwise inject some measure of substantiation into [the] fraud allegation." *Id.*

4

## II.    Rule 12(b)(6)

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Although courts construe *pro se* pleadings less stringently than formal pleadings drafted by attorneys, *pro se* litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a Defendant may move to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must

consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

## DISCUSSION

### I.   Standing

Defendant argues that Plaintiff lacks standing to bring his claims related to Sugar Babies. (Def.'s Br. at 32–34, ECF No. 15-1.) To establish Article III standing, a plaintiff must show (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In a class action, a plaintiff "must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see also Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *4 (D.N.J. July 29, 2008) ("[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.").

Here, Plaintiff alleges that he purchased Junior Mints. (*See* Am. Compl. ¶¶ 1, 6.) He does not allege that he purchased Sugar Babies. (*See id*.) Because Plaintiff cannot show that he was personally injured by a product he did not purchase, the Court finds that he lacks standing to bring his claims related to Sugar Babies. *See Lieberson*, 856 F. Supp. 2d at 537 (concluding that plaintiff lacked standing to pursue claims for unpurchased baby bath products); *In re Subaru*

*Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *8 (D.N.J. Mar. 31, 2021) (concluding that plaintiffs lacked standing to pursue claims for unpurchased vehicles).

Plaintiff urges the Court to follow the approach taken by some courts in this district and find dismissal of claims for unpurchased products premature at the motion-to-dismiss stage. (*See* Opp'n at 35–36, ECF No. 18) (citing *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 873 (D.N.J. 2020)). Courts that have found dismissal at the motion-to-dismiss stage premature have found the following three elements present: "[1] the basis for the [p]laintiffs' claims [are] the same, [2] the products [are] closely related, and [3] the defendants [are] the same." *Powell*, 502 F. Supp. 3d at 873.

Even if the Court followed this approach and considered the *Powell* factors, the Court's conclusion would remain the same. It is true that Plaintiff's claims have the same basis and the same Defendant. (*See* Am. Compl. ¶¶ 7, 20 31–36.) However, the Products are not sufficiently related to confer standing and avoid dismissal. The Products' boxes are different sizes and different volumes and contain different net weights of candy product. (*Id.* ¶¶ 1, 19, Figures 1, 3.) The Products contain different ingredients. (*See id.* ¶ 29.) And only the Junior Mints box contains the disclosure "product sold by weight not volume," whereas the Sugar Babies box contains no such disclosure. (*See id.* ¶ 57, Figure 8.) Accordingly, the Court will dismiss Plaintiff's claims related to Sugar Babies for lack of standing.[1]

## II.   Matters Outside of the Pleadings

Generally, a district court must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), but "a court may consider certain narrowly defined types of

---

[1] Although the Court refers to "the Products" throughout the Opinion, the Court's analysis hereafter applies only to Junior Mints, as Plaintiff's Sugar Babies claims are dismissed.

material" beyond the pleadings, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The court may also consider "documents . . . explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).

In his Opposition, Plaintiff objects to Defendant's reliance on (1) the declaration of Gordon Brown (the "Brown Declaration"); and (2) numerous statements that contradict statements in the Amended Complaint. (*See* Pl.'s Obj. to Brown Decl. at 2–3, ECF No. 18-3; Pl.'s Obj. to Other Statements at 3–5, ECF No. 18-4.)

A.    *Brown Declaration*[2]

The Court will not consider the Brown Declaration. Defendant submits the Brown Declaration to counter some of Plaintiff's statements regarding the dimensions of the Products and comparator products. (*See* Brown Decl. ¶¶ 2–5, ECF No. 10-1.) The Brown Declaration introduces evidence outside of the pleadings. It is not incorporated by reference in the Amended Complaint or integral to the claim, nor is it a matter of public record or subject to judicial notice. *See Buck*, 452 F.3d at 260. Accordingly, the Court will not consider the Brown Declaration at this stage.

---

[2] Defendant submitted the Brown Declaration on January 29, 2021, appended to its first Motion to Dismiss. (*See* ECF Nos. 10, 10-1.) On February 19, 2021, Plaintiff filed the First Amended Complaint (ECF No. 13), and the Court subsequently found Defendant's first Motion to Dismiss to be moot (ECF No. 14). Although Defendant did not re-file the Brown Declaration with the present Motion to Dismiss, (*see* ECF No. 15), Defendant relies on the Brown Declaration in its brief. (*See* Def.'s Br. at 7, ECF No. 15-1.)

B.    *Other Statements*

Plaintiff objects to several other statements made by Defendant in its brief. (*See* Pl.'s Obj. to Other Statements at 3–5.) Two of the objectionable statements address comparator products, Junior Mints XL and Boston Baked Beans. (*See id.* at 3.)[3] The Court agrees that these statements introduce factual matter outside of the pleadings and will not consider them.

Plaintiff also objects to statements made by Defendant about whether the Products' slack-fill serves a functional purpose under Federal Drug Administration ("FDA") guidelines. (*See id.* at 3–5.)[4] Likewise, these statements rest on matters outside the pleadings, so the Court will not

---

[3] These statements are:

- [T]he "XL" box is 0.0625 inches deeper than the challenged "regular" box, creating approximately 9% more volume in the box. . . .
- Boston Baked Beans are small "candy coated peanuts" with hard interiors and hard outer shells; Junior Mints, which are considerably wider in diameter, consist of a soft mint filling coated in a thin layer of chocolate.

(Pl.'s Obj. to Other Statements at 3, ECF No. 18-4.)

[4] These statements are:

- It is evident, moreover, that the slack[-]fill in the Product packaging served at least three of the purposes expressly permitted by the FDA. . . .
- The FDA allows slack[-]fill to protect the contents of a package and prevent product breakage. 21 C.F.R. § 100.1001(a)(1). It is common sense that candy products – especially Junior Mints with their soft center – could be damaged if squished together in a box. This is particularly true during shipping when the boxes are stacked tightly, eliminating any give that might otherwise be present. Slack[-]fill helps prevent such damage and is permitted by federal regulations for this purpose. . . .
- The FDA also recognizes that empty space may accommodate the way individual pieces of candy may "settl[e]," which affects how much of the container the candy occupies. 21 C.F.R. § 100.100(a)(3). "Settling" occurs when the shape of the food item leads to varying amounts of container space being occupied, depending on how the items stack above and beneath one another. The FDA acknowledges that such settling "is a normal, unavoidable process for many types of food." 58 Fed. Reg. 2957-01, 2961. . . Here, it is evident that non-uniform

9

consider them. The Court's task, at this stage, is to determine whether the Amended Complaint states a claim, not whether the Products contained functional or non-functional slack-fill.

By contrast, the Court will consider Defendant's statement that "there are no well-pleaded facts to support [P]laintiff's conclusion that damage may be caused by slack-fill, as opposed to prevented from slack[-]fill," (*see id.* at 4), because it is a statement of legal argument. And the Court will also consider Defendant's statement that "the presence of empty space in the box could have been determined by handling [it] . . . [c]ommon sense dictates that [Plaintiff] did handle the box while carrying it to the register." (*See id.* at 3.) This statement does not introduce information extraneous to the pleadings but merely asks the Court to "draw on its judicial experience and common sense." *See Iqbal*, 556 U.S. at 679.

### III.    Count 1: New Jersey Consumer Fraud Act

To state a claim under the NJCFA, a plaintiff must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the

---

shaped candies such as Junior Mints and Sugar Babies – which are both roughly as wide as the paper box is deep . . . could settle in myriad ways, depending upon whether the box is being held in a rigid sleeve to maintain shape (such as during filling), stacked tightly against other boxes (such as during shipping), or being handled and manipulated (such as during purchase and consumption). This settling could obviously lead to varying amounts of the box being taken up by the candies. In this context, plaintiff's conclusory assertion that "No additional product settling occurs during subsequent shipping and handling" . . . is "illogical and implausible." . . .

- Finally, the FDA allows slack-fill to accommodate the requirements of the machines that are used to enclose the contents in the packaging. 21 C.F.R. § 100.100(a)(2) . . . [B]ecause of the various ways in which the candies may settle during the container-filling process, slack-fill is obviously necessary to avoid overfilling the boxes; otherwise, candy pieces could get covered with heated glue, get stuck in the flaps of the packaging, spill into the machinery, or otherwise interfere with the packaging and sealing process.

(*Id.* at 3–5.)

unlawful conduct and the ascertainable loss. *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, *Inc.*, 929 A.2d 1076, 1086 (N.J. 2007).

  A.  *Unlawful Conduct*

  To be "unlawful conduct" for purposes of the NJCFA, the conduct must be "misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (internal quotation marks omitted). "Mere customer dissatisfaction does not constitute consumer fraud." *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998). Unlawful conduct "fall[s] into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202. "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

  Here, Plaintiff appears to assert an NJCFA claim based on affirmative acts. Plaintiff alleges that Defendant "affirmatively misrepresented the amount of candy product contained in the Products' boxes in order to convince the public and the Products' consumers . . . to purchase the Products[.]" (Am. Compl. ¶ 10.) He asserts that Defendant did this in several ways: through deceptive labeling, packaging, and "Internet, and informercial advertisements, among other advertising." (*Id.* ¶¶ 7, 10–11, 14, 103, 109.)

  1.  <u>Packaging and Labeling</u>

  As a preliminary matter, the Amended Complaint's packaging and labeling allegations are not pled with the particularity required by Rule 9(b). Plaintiff alleges that he purchased a box of Junior Mints in 2017 at an Albertsons in New Jersey. (Am. Compl. ¶ 6.) He does not allege

the date or month of purchase, nor does he state the location of the Albertsons. These allegations are insufficient "to place . . . [D]efendant on notice of the precise misconduct with which [it is] charged." *See Frederico*, 507 F.3d at 200 (internal quotation marks omitted); *compare Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *14 (D.N.J. Nov. 30, 2011) (finding allegations that plaintiffs purchased chicken products on May 14, 2010, July 6, 2010, and July 26, 2010 at B.J.'s Wholesale Club in Old Bridge New Jersey to be sufficient), *and Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, at *7 (D.N.J. May 12, 2010) (reasoning that plaintiff pled NJCFA claim with requisite particularity when he alleged "the time and place of the alleged fraud (a Wal-Mart in Wisconsin on September 29, 2008)"), *with Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 709–10 (D.N.J. 2011) (concluding that plaintiffs' allegations that the misrepresentations occurred "in New Jersey where [the] [d]efendants' headquarters are located" were insufficient under Rule 9(b) because they did not "specifically identify the time, place, or manner of the alleged fraud").

Even if the Amended Complaint's allegations of fraud were pled with particularity, Plaintiff's allegations about the Products' packaging and labeling do not amount to "misleading" conduct that will "victimize the average consumer." *See N.J. Citizen Action*, 842 A.2d at 177. To begin, the Products contain a disclosure that the Products are sold by weight, and not volume, which addresses the very information that Plaintiff alleges was misrepresented. (*See* Am. Compl. ¶ 57, Figure 8.) Plaintiff does not allege that this disclosure is inaccurate or otherwise explain why a consumer would not see the disclosure and rely on it. *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) (concluding that "[i]t defies logic to accept that the reasonable consumer would not rely upon the stated pill count" printed on a bottle of Advil).

Furthermore, the net weight of the candy, both in metric and standard measurements, is displayed on the front of the Products' boxes in easily discernable font. (*See* Am. Compl. ¶ 57, Figure 8.) Numerous other courts, including one that considered the same Products at issue in this case, have concluded that similar labeling cannot mislead or deceive the reasonable consumer. *See Daniel v. Tootsie Roll Indus. LLC*, 2018 WL 3650015, at *11–12 (S.D.N.Y Aug. 1, 2018) (concluding that "the slack-fill enclosed in [a box of Junior Mints] would not mislead a reasonable consumer" because the Junior Mints' boxes included the net weight of the candy and consumers have come to expect some slack-fill in certain products); *see also United States v. 174 Cases, More or Less, Delson Thin Mints Chocolate Covered*, 195 F. Supp. 326, 328 (D.N.J. 1961) (granting a motion to dismiss and explaining that "[t]he [c]orrect net weight of the candy is disclosed on the wrapper of the accused package"), *aff'd*, 302 F.2d 724 (3d Cir. 1962); *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *10 (S.D.N.Y. Mar. 27, 2018) (finding that no reasonable consumer would be deceived by slack-fill in a bag of potato chips that prominently featured the net weight of the contents on the front of the package). And Plaintiff does not suggest that the net weight, serving size, or number of servings figures on the Products are not accurate or visible to a consumer. As the Court in another Junior Mints slack-fill case explained, a consumer "can easily calculate the number of candies contained in the Product boxes simply by multiplying the serving size by the number of servings in each box, information displayed in the nutritional facts section on the back of each box." *See Daniel*, 2018 WL 3650015, at *12.

2. <u>Advertising</u>

The Amended Complaint does not reference any specific advertisements and only refers generally to "Internet, and infomercial advertisements, among other advertising." (Am. Compl. ¶ 14.) Plaintiff does not contend that he saw any advertisements, but merely states that "he would

not have purchased the Products if he had known that the . . . advertising . . . was false and misleading." (*Id.* ¶ 93.) These statements do not provide the sufficient detail required to "inject precision or some measure of substantiation" into the pleadings. *See Frederico*, 507 F.3d at 200; *see also Lieberson*, 865 F. Supp. 2d at 539 (finding that allegations of misrepresentations in advertisements were insufficient when the plaintiff did not identify "where or when th[e] statements were made or whether and when she actually viewed them"). Thus, Plaintiff's allegations regarding Defendant's advertising are insufficient under Rule 9(b).

      B.    *Ascertainable Injury or Loss*

"[T]o demonstrate a loss, a victim must simply supply an estimate of damages, calculated within a reasonable degree of certainty." *Cox*, 647 A.2d at 464. An ascertainable loss must be "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005). Thus, "[a]t the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009) (citing *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1000 (N.J. Super. Ct. App. Div. 2006); *Thiedemann*, 872 A.2d 783, 792–93).

Plaintiff's allegations of ascertainable loss are insufficient to support his claim. Plaintiff states that consumers are being "shortchanged" servings of candy product in each box because of the inclusion of the slack-fill. (Am. Compl. ¶ 57.) He also states that Defendant charges a "price premium" for the Products. (*Id.* ¶ 112.) However, Plaintiff has not alleged the price he paid for the Products in 2017, nor has he alleged the price of the Products generally. (*See generally* Am. Compl.) And Plaintiff does not allege that the alleged "price premium" is linked to the allegedly unlawful slack-fill in the box. (*See* Am. Compl. ¶¶ 40, 80.) Without this information, the Court is unable to "quantify the difference in value between the promised product and the actual product

14

received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011); *see also Lieberson*, 865 F. Supp. 2d 529, 541–42 (reasoning that "absent any specific information concerning the price of the [p]roducts or the price of any comparable products, [p]laintiff's allegations concerning ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss"); *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (concluding that the plaintiff failed to plead ascertainable loss when he did not allege that the 492 count sheets he purchased "were worth an amount of money less than the [1,000 thread count] sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase").

    C.    *Causal Relationship*

    "The third element a plaintiff must allege to state a claim under the NJCFA is a 'causal relationship' between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Arcand*, 673 F. Supp. 2d at 303 (citing *Miller v. Am. Fam. Publishers*, 663 A.2d 643, 648 (N.J. Super. Ct. Ch. Div. 1995); *Frederico*, 507 F.3d at 202). Allegations "where the consumer urges that his purchase was the 'but-for' consequence of the seller's unlawful conduct, suffice under the NJCFA's causal nexus requirement." *Id.* at 304.

    Here, Plaintiff alleges that "he would not have purchased the Product, or would not have paid a price premium for the Product, had he known" that "the Products contained slack-fill that serves no functional or lawful purpose" and "the size of the box and the Product label were false and misleading." (Am. Compl. ¶¶ 6, 46.) Accordingly, Plaintiff has adequately pled the third element of his NJCFA claim.

    In sum, the Court finds that Plaintiff fails to plead unlawful practice and ascertainable loss under the NJCFA. Accordingly, Plaintiff's NJCFA claim is dismissed.

15

IV.     **Count 2: Express Warranty**

To plead a breach of express warranty claim under New Jersey law, a plaintiff must

allege: (1) that the defendant made an affirmation, promise, or description about the product; (2)

that this affirmation, promise, or description became part of the basis of the bargain for the

product; and (3) that the product ultimately did not conform to the affirmation, promise, or

description. *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J.

Stat. Ann. § 12A:2-313).

Plaintiff alleges that Defendant's advertising, labeling, packaging, and marketing, as well

as the size of the Products' boxes, create an express warranty that the Products contain an

amount of candy product commensurate with the size of the box. (Am. Compl. ¶¶ 37, 117.)

Plaintiff's allegations do not establish a breach of express warranty. The Products' labels

include the number of serving sizes per container, and the Junior Mints' label states that it is

"sold by weight, not volume." (*Id.* ¶ 57, Figure 8.) The Products conformed to these statements;

therefore, there is no basis for a claim of breach of express warranty. *See Snyder*, 792 F. Supp.

2d at 721 (citing N.J. Stat. Ann. § 12A:2-313).

Plaintiff's allegations about marketing and advertising are also insufficient. (*See* Am.

Compl. ¶ 116 ("[Defendant's] marketing, and advertising constitutes express warranties that

became the basis of the bargain, and which are part of the standardized contract between Plaintiff

and . . . [Defendant].").) Plaintiff does not allege any specific facts about affirmations made in

advertising or marketing that became the basis of the bargain. Such bare assertions, without

more, cannot survive a motion to dismiss. *See Parker v. Howmedica Osteonics Corp.*, 2008 WL

141628, at *6 (D.N.J. Jan 14, 2008) (finding that general references to "press release" and

"assurances of safety," as opposed to specific statements, cannot survive a motion to dismiss);

*Simmons v. Stryker Corp.*, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty").

Finally, the size of the Products' boxes does not create an express warranty. Courts in this district have found that certain labels or logos on packaging can provide the basis for a breach of express warranty claim. *See, e.g.*, *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d, 304, 325 (D.N.J. 2014) (finding allegations that the affixation of the Energy Star Logo to washing machine "would be understood by consumers as an affirmation of fact or a promise regarding the energy efficiency of the washing machines" sufficient to adequately allege an express warranty claim); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008) (holding that descriptions about fat and caloric content on frozen food products created an express warranty). However, such logos or labels overtly express some sort of affirmative promise or description to the consumer. An express warranty based on the size of the box alone is, in essence, an *implied* express warranty, which the law does not permit. *See Fidelity & Guar. Ins. Underwriters Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 452 (D.N.J. 2013) (rejecting plaintiff's breach of express warranty claim because plaintiff "fail[ed] to identify any specific express representations made by [defendant]"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *7 (D.N.J. July 9, 2010) (explaining that "[p]laintiffs appear to argue that [defendant] breached an 'implied express' warranty of safety. By legal definition, an express warranty must be express"). Accordingly, Plaintiff's breach of express warranty claim is dismissed.

## V.     Count 3: Unjust Enrichment

To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would

17

be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). A plaintiff must also show that he "expected remuneration from the defendant at the time [he] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* A plaintiff may not confer the benefit on a different party, such as a third-party retailer. *See Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) ("Plaintiff . . . concedes that he purchased his [printer] from Office Depot and not directly from [defendant]. . . . Therefore, his benefit is not directly conferred upon [defendant] and his unjust enrichment claim is dismissed.").

Plaintiff alleges that he bought a box of Junior Mints from Albertsons. (Am. Compl. ¶ 6.) Because Plaintiff purchased the product from a third-party retailer, rather than from Defendant, "[he] cannot rightfully expect any remuneration from Defendant[], since [he] never directly conferred a benefit on Defendant[]." *See Snyder*, 792 F. Supp. 2d at 724. Accordingly, Plaintiff's unjust enrichment claim is dismissed.

## VI.    Count 5: Implied Warranty of Merchantability

"In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Lieberson*, 865 F. Supp. 2d at 542. "The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Id.* (internal quotation marks omitted). Put another way, merchantability requires the product sold to be "of the general kind described and reasonably fit for the general purpose for which it should have been sold[.]" *Adams v. Peter Tramontin Motor Sales, Inc.*, 126 A.2d 358, 362 (N.J. Super. Ct. App. Div. 1956).

Plaintiff does not allege that the Products were not fit for their ordinary purpose, namely,

for human consumption. Nor has he alleged any facts that the Products were otherwise defective. Plaintiff's argument that the purpose of the Products was "to contain an amount of candy commensurate with the size of the Products' packaging," (*see* Opp'n at 32), is without merit. The implied warranty of merchantability is a *general* requirement: it necessitates that a product be reasonably fit for its general, or ordinary, purpose. *Adams,* 126 A.2d at 362; *see, e.g.*, *Hollinger v. Shoppers Paradise of N.J., Inc.*, 340 A.2d 687, 693 (N.J. Super. Ct. Law Div. 1975) (concluding that "the ordinary and intended purpose for raw pork is consumption after [p]roper cooking by the consumer"); *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, 2009 WL 2940081, at *17 (D.N.J. Sept. 11, 2009) (finding that the "ordinary purpose" of HD DVD players was to "play HD DVDs"). Because Plaintiff does not allege that the Products were not fit for their ordinary purpose, Plaintiff's implied warranty of merchantability claim is dismissed.

## VII.   Counts 4, 6–7: Fraud, Intentional and Negligent Misrepresentation

Plaintiff also brings claims for fraud, intentional misrepresentation, and negligent misrepresentation. (Am. Compl. ¶¶ 128–135, 143–150, 151–158.) Under New Jersey law, fraud and intentional misrepresentation both require "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Relators*, 691 A.2d 350, 367 (N.J. 1997). Negligent misrepresentation requires: (1) an incorrect statement, (2) negligently made, (3) upon which plaintiff relied, and (4) resulted in economic loss or injury as a consequence of that reliance. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (citing *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142–43 (N.J. 1983)).

Rule 9(b) allows intent and knowledge to be "alleged generally." *See* Fed. R. Civ. P. 9(b).

However, "Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87. "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (holding that even under a "relaxed application" of Rule 9(b), "boilerplate and conclusory allegations will not suffice. . . . [p]laintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible").

Plaintiff's allegations regarding Defendant's knowledge, intent, and negligence are boilerplate and conclusory. Plaintiff alleges that Defendant acted, "willfully, falsely, and knowingly," and that Defendant "knew of, or showed reckless disregard for, the fact that the Products contained a substantial amount of non[-]functional slack-fill." (Am. Compl. ¶¶ 130, 132.) Plaintiff does not include any additional facts regarding Defendant's knowledge. Regarding Defendant's intent, Plaintiff asserts, in a conclusory fashion, that Defendant "intended for Plaintiff . . . to rely on [its] representations, as evidenced by [Defendant's] intentional manufacturing of packaging that is substantially larger than necessary to hold the volume of the contents contained therein." (*Id.* ¶ 133.) And regarding Defendant's alleged negligence, Plaintiff merely alleges that Defendant "knew or should have known that the Products were not adequately filled with candy but instead contained a substantial amount of non[-]functional slack-fill." (*Id.* ¶ 155.) The Court concludes that Plaintiff has not provided sufficient "factual allegations that make [his] theoretically viable claim[s] plausible." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418. Accordingly, Plaintiff's fraud, intentional misrepresentation, and negligent misrepresentation claims are dismissed.

## VIII.   Leave to Amend

Plaintiff requests leave to amend the Amended Complaint upon dismissal. (Opp'n at 37–38.) Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty (30) days if he wishes to do so, to cure the deficiencies in the Amended Complaint identified in this Opinion. However, Plaintiff may not amend his unjust enrichment claim, because the Court concludes that any amendment would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 15) is granted. An appropriate Order will follow.

Date: October 18, 2021                                    */s/ Anne E. Thompson*
                                                          ANNE E. THOMPSON, U.S.D.J.